UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EARNESTO BLEDSOE, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 4:10CV00049 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on movant Bledsoe's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence." The government has filed a response, and the matter is now ripe for adjudication.

I. PROCEDURAL BACKGROUND

On June 4, 2008, Earnesto Bledsoe was indicted on one count of Attempted Robbery of Bank of America on November 6, 2007, and one count of Robbery of Bank of America on March 12, 2008. On October 20, 2008, Bledsoe pled guilty to the attempted bank robbery charge pursuant to a written plea agreement with the United States. Specifically, Bledsoe agreed to plead guilty in exchange for dismissal by the United States of the bank robbery charge at the time of sentencing.

In the plea agreement, the parties agreed to recommend a base offense level of 20. Plea Agreement at 6. The parties also agreed to recommend a two-level enhancement because the taking of property of a financial institution was an object of the offense, and an additional two-level enhancement because a threat of death was made during the commission of the offense. Plea Agreement at 6. After a reduction for acceptance of responsibility, the parties agreed to

recommend a total offense level of 21. Plea Agreement at 6-7. Bledsoe stipulated to the following facts in the written plea agreement:

> On November 6, 2007, the defendant Earnesto Bledsoe entered the Bank of America, 2604 South Jefferson Avenue, St. Louis, Missouri, within the Eastern District of Missouri, and presented a handwritten note to one of the bank tellers. The note announced a robbery, announced that the defendant was in possession of a gun, and demanded money. While the victim teller attempted to locate the silent alarm, the defendant put his hand in his pocket to further indicate that he was in possession of a gun. After a brief pause, the defendant fled the bank without obtaining any money. The deposits of the Bank of America are insured through the Federal Deposit Insurance Corporation.

Plea Agreement at 8-9.

Bledsoe was advised in the plea agreement that the maximum possible penalty for the crime to which he pled guilty included imprisonment of not more than 20 years. Plea Agreement at 9. The written plea agreement also contained the following:

> The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

Plea Agreement at 12.

Bledsoe formally entered his guilty plea on the record and under oath at a hearing on October 20, 2008. At the hearing, Bledsoe acknowledged that he had carefully read and signed the plea agreement and that he went over it with his lawyer and understood what was in the plea agreement. Plea Tr. at 4, 11-12. He also acknowledged that he had plenty of time to discuss his case and his guilty plea with his lawyer, that he was satisfied with his lawyer's handling of the case, and that he had no complaints whatsoever about how his lawyer represented him. Plea Tr.

at 8. At the hearing, this Court noted, and Bledsoe acknowledged, that the parties were recommending a total offense level of 21. Plea Tr. at 14. Bledsoe further confirmed that there were no other promises made to him, beyond what was contained in the plea agreement, to get him to plead guilty. Plea Tr. at 15.

At the hearing on the change of plea, Bledsoe did not raise any concerns about the two-level enhancement for the attempted taking of property of a financial institution. After the Assistant United States Attorney ("AUSA") recited the facts the United States would prove at a trial, Bledsoe clarified to the Court that he did not possess a gun during the commission of the offense. Plea Tr. at 15-18. He also initially seemed to dispute the AUSA's recitation of the contents of the demand note, at one point claiming that the note did not make reference to a gun. Plea Tr. at 18. Bledsoe later agreed that the demand note did indicate that he had a gun. Plea Tr. at 19, 23-24. Bledsoe also agreed that during the robbery attempt, he made certain actions to indicate to the teller that he was in possession of a gun. Plea Tr. at 20-21, 23-24.

A pre-sentence investigation report ("PSR:) was prepared by a United States Probation Officer. The Probation Officer's guideline calculations matched those recommended by the parties in the plea agreement. PSR at 3. The Probation Officer found that the total offense level was 21 and Bledsoe's criminal history category was four. Accordingly, the Probation Officer found that the applicable guideline imprisonment range was 57 to 71 months. PSR at 13. On January 16, 2009, the Court sentenced Bledsoe to 57 months in prison and two years supervised release.

Bledsoe filed the present motion on January 11, 2010. Bledsoe makes two claims in his motion. First, he claims that his sentence was erroneously increased based on enhancements that

applied to the count that was dismissed as part of the plea agreement. Second, he claims that his attorney provided ineffective assistance regarding the plea agreement with the United States. For relief, Bledsoe asks this Court to deduct points from his sentencing guidelines calculation and to resentence him after making the appropriate reductions.

For the reasons that follow, the motion should be denied.

II. DISCUSSION

A. Guideline Enhancements

Bledsoe's first claim, which relates to guideline enhancements applied at sentencing, must fail. Section 2255 permits a prisoner serving a federal sentence to request that the sentence be vacated, set aside or corrected on the ground that the sentence was "in excess of the maximum authorized by law." 28 U.S.C. § 2255. As the Eighth Circuit has stated, "this provision applies to violations of statutes establishing maximum sentences, rather than the garden-variety Sentencing Guideline application issues." Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995). Thus, it is well settled in the Eighth Circuit and in other circuits that an alleged error in applying the sentencing guidelines is not cognizable in a section 2255 motion. Id. (alleged improper use of prior conviction under sentencing guidelines not cognizable under section 2255); United States v. Ward, 55 F.3d 412, 413 (8th Cir. 1995) (alleged error in type of drug attributed to defendant for sentencing purposes not cognizable under section 2255); Knight v United States, 37 F.3d 769, 772-74 (1st Cir. 1994) (misapplication of sentencing guidelines not usually subject to section 2255 review); United States v. Mikalajunas, 186 F.3d 490, 496 (4th Cir.) (same), cert denied, 529 U.S. 1010 (2000); Nichols v. United States, 75 F.3d 1137, 1145 (7th Cir. 1996) (error in calculating guideline range not subject to section 2255 review). Instead,

alleged errors in applying the sentencing guidelines should be pursued on direct appeal. Auman, 67 F.3d at 161.

Bledsoe's claim is the type that is not cognizable in a section 2255 motion. Bledsoe pled guilty to count one of the indictment and claims that his sentence "was enhanced based on an alleged threat of death in a note and due to relevant conduct that overlapped from count two-- namely . . . ., the taking of money from a financial institution, and, also, an alleged threat of death." Motion at 5. Bledsoe does not argue, however, that his sentence was in excess of the statutory maximum penalty, which is twenty years in prison. 18 U.S.C. § 2113(a). Even if Bledsoe was correct that he should not have been assessed the aforementioned enhancements, the sentence he in fact received was within the statutory sentencing range and less than the maximum. Bledsoe's sentence was not "in excess of the maximum authorized by law." 28 U.S.C. § 2255; Auman, 67 F.3d at 161. Accordingly, any alleged error by the Court is not cognizable in a § 2255 motion, but should have been brought in a direct appeal challenging the sentence. This claim fails.

B. Ineffective Assistance

Bledsoe's ineffective assistance claim also must fail because he cannot establish either element of his claim. A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). To succeed on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Sera, 267 F.3d 872, 874 (8th Cir. 2001); DeRoo, 223 F.3d at 925.

An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Strickland, at 687-88; Sera, 267 F.3d at 874. In evaluating an attorney's performance, a court must begin with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; Sera, 267 F.3d at 874. See also Ford v. Lockhart, 905 F.2d 458, 462 (8th Cir. 1990) (evaluation of a claim of ineffective assistance of counsel is highly deferential with a strong presumption that counsel acted competently).

It is important to note that a court need not even determine whether a movant meets the "performance" prong of the Strickland test because both the United States Supreme Court and the Eighth Circuit Court of Appeals have noted that "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *which we expect will often be so*, that course should be followed.'" Young v. Bowersox, 161 F.3d 1159, 1160 (8th Cir. 1998)(emphasis added) (quoting Strickland, 466 U.S. at 697), cert. denied, 528 U.S. 880 (1998)). See also Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), cert. denied, 531 U.S. 829 (2000).

Looking then at the second prong of the analysis, to show prejudice required by Strickland, the movant must demonstrate that counsel's errors were so serious as to render the result of the trial unreliable or the proceeding fundamentally unfair. The United States Supreme Court clarified the "prejudice" analysis to be applied in ineffective assistance of counsel cases. It is not enough for the movant just to show that the outcome would have been different. The Supreme Court explained:

> [A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

Lockhart v. Fretwell, 113 S. Ct. 838, 842-43 (1993)(footnote omitted). The Supreme Court specified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Because counsel is presumed to be effective, Cox v. Wyrick, 642 F.2d 222, 226 (8th Cir.), cert. denied 451 U.S. 1021 (1981), the movant bears a heavy burden in proving that counsel has rendered ineffective assistance. Howard v. Wyrick, 720 F.2d 993, 995 (8th Cir. 1983), cert. denied 466 U.S. 930 (1984). See also Sidebottom v. Delo, 54 F.3d 1357, 1365 (8th Cir. 1995).

*1. Bledsoe's Attorney Did Not Provide Deficient Performance.*

Bledsoe seems to claim that he was somehow misled about the terms of the plea agreement. Although unclear, he apparently claims that his attorney manipulated him into agreeing not to challenge the enhancements he now complains about. Motion at 6. Bledsoe's claim should fail for at least two reasons. First, the guideline enhancements at issue clearly applied and it cannot be deficient performance to recommend agreeing to enhancements that legally apply. Second, the record demonstrates that Bledsoe was aware of the enhancements and the facts that made them applicable, and agreed to both.

*(a) The Guideline Enhancements were Correctly Applied.*

The guideline enhancements were correctly applied in Bledsoe's case. Section 2B3.1(b)(1) of the Sentencing Guidelines applies a two-level enhancement "if the taking of [the property of a financial institution] was an object of the offense." The undisputed and stipulated

facts of Bledsoe's offense clearly demonstrate that, although no money was actually taken, the taking of the property of a financial institution was *an object* of the offense. Bledsoe attempted to rob Bank of America, a federally insured financial institution. Plea Agreement at 8-9.

Section 2B3.1(b)(2)(F) applies a two-level enhancement "if a threat of death was made" during the course of the offense. Again, the undisputed and stipulated facts demonstrate the applicability of this enhancement. With his plea, although he equivocated at the change of plea hearing initially, Bledsoe admitted that his demand note announced that he was in possession of a gun and that during the attempted robbery he made a gesture to indicate that he was in possession of a gun. Plea Agreement at 8; Plea Tr. at 19-24. Those actions are sufficient to constitute a threat of death under the guidelines. See U.S.S.G. § 2B3.1(b)(2)(F), comment. (n.6); United States v. Sallis, 507 F.3d 646, 650-51 (8th Cir. 2007) (demand note stating "give me the money or I'll shoot you" was sufficient for threat of death enhancement); United States v. Smith, 973 F.2d 1374, 1377-78 (8th Cir. 1992) (threatening statements coupled with gesture of placing hand under coat as if holding a gun was sufficient for threat of death enhancement).

Bledsoe is simply incorrect when he claims that the enhancements do not apply. He is also incorrect in his claim that the enhancements arose out of count two of the indictment, which was dismissed.

*(b) Bledsoe Agreed to the Enhancements.*

The record simply does not support any inference that Bledsoe was not aware of and did not agree to the enhancements. The enhancements were expressly set forth in the written plea agreement, which Bledsoe acknowledged reading and reviewing with his attorney. See Plea Agreement at 6; Plea Tr. at 11. There were no side deals or unwritten promises that negated the

enhancements. Bledsoe confirmed that there were no other promises made to him beyond what was in the plea agreement. Plea Agreement at 13; Plea Tr. at 15. Although he now claims that he was manipulated into signing the plea agreement, Bledsoe made no such claim at the change of plea hearing, when he was under oath. In fact, he made clear that no one had coerced him or forced him to plead guilty. Plea Tr. at 10-11.

*2. Bledsoe Cannot Establish Prejudice.*

Bledsoe's motion also should be denied because he cannot establish that his attorney's alleged deficient performance prejudiced him. To show prejudice, the movant must demonstrate that counsel's alleged errors were so serious as to render the outcome of the case fundamentally unfair or unreliable. Lockhart v. Fretwell, 113 S. Ct. 838, 842-43 (1993). In the context of a challenge to a guilty plea, the movant must show that but for the attorney's alleged errors, he would have pleaded not guilty and would have gone to trial. Hill v. Lockhart, 474 U.S. 52, 59-60 (1985); Thomas v. United States, 27 F.3d 321, 325 (8th Cir. 1994).

Bledsoe contends that his attorney was ineffective, but he does not allege that but for his attorney's errors, he would have insisted on a trial. Instead, he requests merely that his guidelines be recalculated and that he be resentenced. Motion at 14. He is not requesting withdrawal of his guilty plea. See Hill, 474 U.S. at 60 (allegations insufficient to establish "prejudice" prong of Strickland where petitioner failed to allege that he would have insisted on going to trial had he been correctly informed about parole eligibility date); Thomas, 27 F.3d at 326 (allegations fail to establish "prejudice" where petitioner did not allege he would have pleaded not guilty had he been informed by counsel of possibility that he would be sentenced as a career offender).

Moreover, the alleged errors of Bledsoe's attorney did not prejudice Bledsoe. Even if Bledsoe had not agreed to the enhancements at issue, the enhancements nevertheless would have been applied by the Court. As previously stated, the undisputed facts demonstrated that the object of the offense was the taking of property of a financial institution - Bank of America. The undisputed facts also demonstrated that Bledsoe engaged in conduct that would instill in a reasonable person a fear of death. Thus, even if Bledsoe's attorney had objected to the enhancements, the objections would have been overruled. See United States v. Apfel, 97 F.3d 1074, 1077 (8th Cir. 1996) (rejecting ineffective assistance claim for lack of prejudice where defendant alleged his trial counsel failed to object to fact which resulted in enhanced sentence, because defendant did not show reasonable probability that the government would have been unable to prove fact, had it been disputed). Thus, Bledsoe cannot show that he suffered prejudice as a result of the alleged errors of his attorney.

III. CONCLUSION

For all the foregoing reasons, Bledsoe's motion is **DENIED**.

**SO ORDERED** this 21st day of April, 2011.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE